# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Sam Katz, | ) | CASE NO.: 1:22-CV-00925-PAB |
| | ) | |
| Plaintiff, | ) | JUDGE: PAMELA A. BARKER |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANT CROSSCOUNTRY** |
| CrossCountry Mortgage, LLC, et al., | ) | **MORTGAGE, LLC'S MOTION TO** |
| | ) | **DISMISS** |
| Defendants. | ) | |
| | ) | |

Defendant CrossCountry Mortgage, LLC, ("CCM") moves this Court, pursuant to Federal Rule of Civil Procedure ("Civ.R.") 12(b)(6) to dismiss Plaintiff's claims against it for failure to state a claim upon which relief can be granted. The Amended Complaint fails to allege facts sufficient to state a plausible claim that Plaintiff is entitled to recover against CCM for violations of the TCPA, TSSA or the CSPA.

    Respectfully submitted,

    /s/Kevin K. Kita
    KEVIN W. KITA (0088029)
    Sutter O'Connell Co.
    1301 East 9th Street
    3600 Erieview Tower
    Cleveland, Ohio 44114
    Phone: (216) 928-2200
    Fax: (216) 928-4400
    Email: kkita@sutter-law.com

    *Attorney for Defendant*
    *CrossCountry Mortgage, LLC*

# BRIEF IN SUPPORT

## I.     INTRODUCTION

Plaintiff, an Arkansas resident, brings this action against CrossCountry Mortgage, LLC, alleging that, over the last four years, CCM made multiple calls per week, using an automatic telephone dialing system ("ATDS"), to his number ending in 1001, in violation of 47 U.S.C. § 227, et seq. ("TCPA") and O.R.C § 4719.04(A), et seq. ("TSSA"). Plaintiff also claims that by virtue of its failure to comply with the TSSA, CCM in turn violated the Ohio Consumer Sales Practices Act ("CSPA").

Plaintiff concedes that the calls alleged in the Amended Complaint include many received in the 12-23 months before he registered his number on the National Do Not Call Registry in November 2020. Plaintiff employs a "shotgun-style" pleading that merely parrots the language of the TCPA and, therefore, Plaintiff's first and second claims (alleged violations of 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 227(c)(5), respectively) must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff's third claim (alleged violations of the Ohio Consumer Sales Practices Act, R.C. § 1345.01) must be dismissed because CCM is exempt from liability under the CSPA; exempt from liability under the TSSA; and Plaintiff fails to allege facts sufficient to substantiate any alleged TSAA violation (if it could survive dismissal – which it can't) substantiates a CSPA claim.

## II.     STATEMENT OF THE FACTS

CrossCountry Mortgage, LLC ("CCM") is a lending company engaged in the business of "Mortgage Brokering/Lending/Servicing". (Trade Name Registration attached as **Exhibit A**). Plaintiff filed his Amended Complaint on August 26, 2022, alleging CCM initiated multiple telephone calls per week to his telephone number ending in 1001 beginning in 2019. (*Pl's Amend. Compl.*, Aug. 26, 2022, at ¶¶8-9). Plaintiff claims each call was made using an ATDS,

routed to a "possible human" "lead generator," and then transferred to a "party." (*Id.*, ¶10). Without explanation, Plaintiff claims a "perceptible delay and manner in which the Plaintiff's information [was] transferred between the lead generator and the party" to whom Plaintiff was transferred, and that some calls were delivered with using a pre-recorded voice. (*Id.*, ¶11).

On its face, the Amended Complaint is intentionally vague to try and construct a claim. (*See generally Pl's Amend. Compl.*). Plaintiff makes no factual allegations regarding, *inter alia*: (1) the nature of any call, i.e. the goods or services being solicited; (2) the identity of the "lead generator" or his/her relationship to CCM; or (3) any benefits CCM received from Plaintiff as a result of any alleged call. (*Id.*). Moreover, Plaintiff does not allege when CCM supposedly called his telephone number, or even how many times they called in any given year. (*See generally Pl's Amend. Compl.*). This is particularly important in light of Plaintiff's allegation that his phone number was not listed on the National Do Not Call Registry until November 2020, nearly two years after the unspecified calls allegedly began. (*Pl's Amend. Compl.* p. 4, ¶8).

As discussed more thoroughly below, such pleading is improper and fails to state a claim against CCM upon which relief may be granted.

## III. LAW & ARGUMENT

### A. Plaintiff must allege sufficient facts to establish a "plausible," not just a "possible," claim for relief in order to survive a motion to dismiss under 12(b)(6).

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). While the court must construe the complaint in the light most favorable

to the plaintiff, to survive a motion to dismiss, a complaint must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 555).

Rather, a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio—Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011), cert. denied, 132 S.Ct. 1583, 182 L. Ed. 2d 172, (2012) (quoting *Iqbal*, 556 U.S. at 677). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

As shown below, The Court must dismiss Plaintiff's claims against CCM in this case, because Plaintiff has not plausibly shown that he is entitled to relief under the applicable law.

**B.** **Plaintiff's Amended Complaint fails to allege facts sufficient to establish CCM Violated §227(b)(3) of the TCPA.**

The Telephone Consumer Protection Act of 1991 (TCPA) proscribes abusive telemarketing practices by, among other things, imposing restrictions on making calls with an "automatic telephone dialing system." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163, 1167, 209 L.Ed.2d 272 (2021). As defined by the TCPA, an "automatic telephone dialing system" is a

piece of equipment with the capacity both "to store or produce telephone numbers to be called, using a random or sequential number generator," and to dial those numbers. 47 U. S. C. §227(a)(1). To qualify as an "automatic telephone dialing system," a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator. *Duguid*, 141 S.Ct. at 1167. Stated conversely, the auto dialer definition "excludes equipment that does not 'us[e] a random or sequential number generator.'" *Id.* at 1171 (citing 47 U. S. C. §227(a)(1)(A)).

To state a claim under 47 U.S.C. 227(b), a complaint must allege facts demonstrating that the plaintiff: (1) received a call; (2) on a cellular line for which the called party is charged for the call or on a residential telephone line; (3) using ATDS equipment or an artificial or prerecorded voice; and (4) made without prior consent and not for emergency purposes. *Reo v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 35596, *9. However, in addition to reciting the statutory language, the Northern District of Ohio holds a plaintiff is also required to include specific factual allegations supporting a claim that an ATDS or prerecorded voice was used. *Id.* at *11 (citing *Johansen v. Vivant, Inc.*, 2012 U.S. Dist. LEXIS 178558, 2012 WL 6590551, *3 (N.D. Ill. Dec. 18, 2012); *Baranski v. NCO Fin. Sys., Inc.*, 2014 U.S. Dist. LEXIS 37880, 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014).

In *Reo v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 35596, plaintiffs alleged that they received a "significant number of phone calls" to "solicit [defendant's] services. *Id*. at *11. There was no description of the content of the calls (or texts) and no information regarding the frequency of the calls, no factual allegations substantiating their conclusory claim that an ATDS was used, nor why they believed that an "artificial or prerecorded voice" was used. *Id*.

Because supporting factual allegations were not alleged in the [complaint], the court held that plaintiff had not stated a plausible claim for relief under the TCPA. *Id.*

Here, as in *Reo*, the Amended Complaint "contains very few factual allegations and merely parrots the statutory elements of Plaintiff's TCPA claims, thus failing to meet the pleading standard set forth in *Twombly*." *Reo*, 2016 U.S. Dist. LEXIS 35596, at *8; *See also Pl's Amend. Compl.* As in *Reo*, "there is no description of the content of the calls" and "no information regarding the frequency of the calls" allegedly originated by CCM. *Id.* at *11; *See also Pl's Amend. Compl.* There are no factual allegations that would support a conclusion that any call from CCM, employed an "artificial or prerecorded voice" – i.e., an inability to interrupt a message or to talk with a human being. *Id.*; *See also Pl's Amend. Compl.* On the contrary, in its substance, Plaintiff's Amended Complaint concedes whatever calls are alleged to be at issue were made by human beings, alleging he spoke with a "lead generator" who then transferred him and his information to a "possible human operator." *Pl's Amend. Compl.* at ¶11,19. The quizzical use of the term "possible human" does nothing to change the substance of the allegations, that Plaintiff was, to the best of his knowledge, conversing with human beings, not listening to a recording on a machine. In light of the foregoing, Plaintiff's unsubstantiated conclusory allegation that "CCM placed calls to Plaintiff's telephone using an…artificial or prerecorded voice" is insufficient to survive a motion to dismiss. *See Bank v. Spark Energy, LLC*, 860 F.App'x 205, 206 (2d Cir.2021).

In fact, the only allegation offered by Plaintiff as a basis for believing any call was possibly the product of an ATDS is a supposed "perceptible delay" when Plaintiff's information was being transferred between a – presumably third-party – lead generator and the "possible human operator" – again, with no identified affiliation to CCM. *Pl's Amend. Compl.* at ¶11

("This is evidenced by the perceptible delay and manner in which the Plaintiff's information is transferred between the lead generator and the party the Plaintiff is transferred to."). The Amended Complaint contains no factual allegations, and provides no explanation of any kind, regarding how the alleged "perceived delay" substantiates a conclusion that the call was made with a device having the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator. *See generally Pl's Amend. Compl.*

In summary, Plaintiff's Amended Complaint simply parrots the TCPA statute and is entirely devoid of the requisite factual allegations to support a claim that CCM violated 47 U.S.C. §227(b). Accordingly, this claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

    **C.**    **Plaintiff's Amended Complaint fails to plead facts sufficient to find CCM made solicitation phone calls in violation of 47 U.S.C. §227(c)(5).**

TCPA § 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA Regulations within a 12-month period *Charvat v. GVN Michigan, Inc.*, 531 F.Supp.2d 922, 926 (S.D.Ohio 2008). The regulations restricting telephone solicitation are found in Section 64.1200, Title 47, C.F.R. and provide in pertinent part:

> (c) No person or entity shall initiate any telephone solicitation to:
>     \* \* \*
> (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. \* \* \*

47 C.F.R 64.1200(c)(2). The purpose of this portion of the statute is to prevent repeated telemarketing calls to someone who has told the telemarketer not to call. *Charvat v. ATW, Inc.*, 127 Ohio App.3d 288, 292, 712 N.E.2d 805 (10th Dist.1998). However, no private right of

action accrues, and a telemarketer is not in violation of the statute unless and until it telephones a party more than once in any twelve-month period. *Charvat v. Southard Corp.*, S.D.Ohio No. 2:18-cv-190, 2019 U.S. Dist. LEXIS 241404, at *6 (Sep. 30, 2019).

The TCPA imposes liability on the party who "makes" or "initiates" a telephone call. *See* 47 U.S.C. § 227(b)(l); 47 C.F.R. § 64.1200(a)(l). The FCC holds that a person will only be held to have "initiate[d] a telephone call when it takes the steps necessary to physically place a telephone call." *In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Red. 6574, 6582, 2013 WL 1934349, at *9. (May 9, 2013). While a seller "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer," the mere possibility that a defendant may be vicariously liable is not sufficient to state a claim for relief. *Id*, at 6282, 2013 WL 1934349, at *8; *see Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Allegations amounting to little more than unsupported legal conclusions that a named defendant is liable for another's alleged TCPA violations.

Here, Plaintiff alleges that CCM began placing calls to his phone number in 2019, roughly two years before he registered his number on the National Do-No-Call Registry in November 2020. *See Pl's Amend. Compl.*, ¶¶8-9. Plaintiff fails to allege when CCM called him, whether any CCM calls were made after November 2020, and/or any facts sufficient to substantiate an allegation that CCM made more than one call within any 12-month-period. *See generally Pl's Amend. Compl.* Plaintiff's blanket allegation that he "received more than one call in a 12-month period by or on behalf of the Defendant" is insufficient to state a claim against CCM. *See Id.* at ¶42. Even taking all factual allegations, and all reasonable inferences that can be drawn therefrom in Plaintiff's favor, Plaintiff cannot state a claim for recovery against CCM.

    **D.**    **Plaintiff fails to plead a viable CSPA claim because CCM is, by definition, exempt from liability under the CSPA.**

The CSPA prohibits "unfair or deceptive" and "unconscionable" acts or practices by <u>suppliers</u> in <u>consumer transactions</u>. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990). In order to prevail on a claim under the Ohio Consumer Sales Practices Act ("CSPA"), Plaintiff must produce evidence sufficient to demonstrate that: (1) Plaintiff is a consumer; (2) CCM is a supplier; (3) CCM committed an unfair and/or deceptive and/or unconscionable act or practice; and (4) the act or practice occurred before, during, or after the consumer transaction. *Williams v. Am. Suzuki Motor Corp.*, 8th Dist. Stark No. 2007-CA-00172, 2008-Ohio-3123. Failure to establish any one of the elements is fatal to the CSPA claim. *Id*.

The CSPA defines a "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions[.]" R.C. 1345.01(C). The terms "effecting" and "soliciting" are not defined by the statute, so the Ohio Courts must give the terms their plain and ordinary meanings. *Anderson v. Barclay's Capital Real Estate, Inc.*, 136 Ohio St.3d 31, 2013-Ohio-1933, 989 N.E.2d 997, ¶ 29. Thus, under the CSPA, "suppliers" are those that cause a consumer transaction to happen or that seek to enter into a consumer transaction; and the Ohio Supreme Court has held that mortgage servicers do not fall within the definition. *Id.* at ¶¶30-31.

Moreover, the CSPA specifically provides that a "consumer transaction" <u>does not</u> include transactions between persons defined in R.C. 5725.01. R.C. 1345.01(A). R.C. 5725.01 defines a "dealer in intangibles" as:

> every person who keeps an office or other place of business in this state and engages *** in a business that consists primarily of lending money, or discounting, **buying, or selling *** notes, mortgages, or other evidences of indebtedness** *** whether on the person's own account with a view to profit, or as agent or broker for others, with a view to profit or personal earnings.

R.C. 5725.01(B)(1). Thus, under the plain language of the CSPA, one who engages in the business of buying or selling mortgages qualifies as a "dealer in intangibles" and is exempt from the Act. *Zanni v. Stelzer*, 174 Ohio App.3d 84, 2007-Ohio-6215, 880 N.E.2d 967, ¶ 12 (9th Dist.).

Here, Plaintiff's silence with respect to the nature of CCM's business as well as the specifics of the alleged transaction are fatal to a finding of CSPA liability. *See generally Pl's Amend. Compl.* Once again, Plaintiff parrots the legal elements alleging CCM solicited Plaintiff to purchase "goods or services," but alleges no facts to suggest CCM meets the definition of a supplier, and no facts to support a finding that the "goods or services" allegedly solicited fall within the definitions provided by the CSPA. (*Pl's Amend. Compl*. p.8, ¶49).

Even if the failure to plead these essential facts were not already dispositive, this Court can also consider matters of public record in ruling on CCM's motion to dismiss. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *Jackson v. City of Columbus*, 194 F.3d 737, 745-46 (6th Cir. 1999) (holding that it was proper for a district court to consider state court records when ruling on a 12(b)(6) motion to dismiss); *Kostrzewa v. City of Troy*, 247 F.3d 633, 644 (6th Cir. 2001). And, looking beyond the obviating company name, and the plethora of information regarding CCM's business published on the company website, CCM's public business filings plainly establish the company as being in the business of "Mortgage Brokering/Lending/Servicing." (**Ex. A**). As a mortgage servicing company and dealer in intangibles, as a matter of law, CCM is exempt from CSPA liability.

Importantly, the exemptions to the CSPA apply to solicitations, even if no transaction is ever consummated. For example, In *Ferron v. Fifth Third Bank*, 10th Dist. No. 08AP-473, 2008-

Ohio-6967, the plaintiff filed a CSPA claim against the defendant financial institution, seeking to hold it liable for alleged CSPA violations in connection with solicitations that were placed in the plaintiff's newspaper. *Id*. at ¶ 2. The plaintiff argued that while the defendant was a financial institution, the exemption of R.C. § 1345.01(A) did not apply because the plaintiff did not have any pre-existing relationship with the defendant, and instead was only the recipient of a solicitation by a financial institution. *Id.* at ¶ 9. In rejecting this argument, the Tenth District explained:

> The definition of "consumer" in R.C. 1345.01(D) leads to circular reasoning in attempting to define "customer." There is nothing in R.C. 1345.02(A) to suggest that, in order to be a "customer," one must be currently engaged in a transaction. Supportive of our reading of "customer" is that **R.C. 1345.01 defines a "consumer transaction" to include a solicitation to provide services, which necessarily occurs before a transaction is commenced or consummated**. Similarly, a violation of the CSPA under R.C. 1345.02(A) includes deceptive practices *that occur before the transaction*. Thus, to limit "customers" to those who already had a relationship with appellee would be inconsistent with the breadth of these other sections. In addition, looking to the definition of "consumer" in R.C. 1345.01(D) for guidance in defining "customer," as appellant suggests, **"consumer" is defined as one engaged in a "consumer transaction," which, again, includes the mere solicitation of goods and is not dependent upon whether the person has an existing relationship with the one engaging in the solicitation.**

*Id.* at ¶ 10 (emphasis added). Likewise, the Tenth District concluded that because the definition of a "supplier" includes persons "soliciting" consumer transactions, the defendant's exemption from the definition still applied in the absence of a pre-existing business relationship. *Id.* at ¶ 11; *see also Lee v. Traci*, 8th Dist. No. 65368, 1994 Ohio App. LEXIS 2384, *20-21 (June 2, 1994) (holding that an attorney's pre-relationship solicitation of a client is excluded from the definition of a "consumer transaction"); *State ex rel. Ag*, Franklin Case No. 07CVH-09-12591, 2010 Ohio Misc. LEXIS 14767, *5-7 (holding that persons who received solicitations were "consumers" of a financial institution and therefore outside the scope of the CSPA even if no business

transaction was consummated); *State ex rel. Cordray v. Citibank (S.D.), N.A.*, Franklin Case No. 07CVH-09-12591, 2010 Ohio Misc. LEXIS 14767, *5-7 (May 24, 2010) (holding that the exemptions listed in the definition of a "consumer transaction" still apply to solicitations even if a relationship is not established).

Here, the exact same reasoning applies. R.C. § 1345.01(A) expressly excludes transactions between financial institutions, like CCM, and their clients from the CSPA, including solicitation of clients. *Ferron*, 2008-Ohio-6967 at ¶ 10. Thus, even if CCM contacted Plaintiff as alleged, CCM's communications to Plaintiff are not a "consumer transaction" and are exempt from the CSPA, regardless of whether Plaintiff consummated any deal with the company.

   **a.**  **Even if CCM were not expressly exempted from the CSPA, Plaintiff still fails to state a claim for a CSPA violation predicated on the TSSA and TCPA because CCM is exempt from the TSSA; and Plaintiff fails to allege facts that any alleged TCPA violation substantiates a CSPA claim.**

Even assuming CCM was not expressly exempted from liability under the CSPA, which it is, Plaintiff's effort to substantiate a CSPA claim predicated on a violation of the Ohio Telephone Solicitation Sales Act, R.C. 4719.01 et seq. ("TSSA") and TCPA, would still be unavailing.

The TSSA – and specifically, R.C. 4719.02(A) – precludes a person from acting as a telephone solicitor without first obtaining a certificate of registration from the attorney general; and R.C. 4719.14 provides that a violation of R.C. 4719.02 (the registration requirement) is an unfair or deceptive act or practice under R.C. 1345.02 of the CSPA. However, under R.C. 4719.01(B), a telephone solicitor is exempt from the provisions of sections 4719.02 to 4719.18 and section 4719.99 of the Revised Code if the telephone solicitor is:

> (9) A supervised financial institution or its subsidiary. As used in division (B)(9) of this section, "supervised financial institution" means a bank, trust company, savings and loan association, savings bank, credit union,

> industrial loan company, consumer finance lender, commercial finance lender, or institution described in section 2(c)(2)(F) of the "Bank Holding Company Act of 1956," 12 U.S.C.A. 1841(c)(2)(F), as amended, supervised by an official or agency of the United States, this state, or any other state of the United States; **or a licensee or registrant under** sections 1321.01 to 1321.19, 1321.51 to 1321.60, or 1321.71 to 1321.83, or **Chapter 1322 of the Revised Code.**

R.C. 4719.01(B)(9)(emphasis added). R.C. 1322.01, *et seq.*, also known as the Residential Mortgage Loan Act, was enacted in 2017 for the purpose of regulating all non-depository lending secured by residential real estate. *See* 2017 HB 199. CCM falls squarely within this regulatory framework as a supervised financial institution engaged in the business of "Mortgage Brokering/Lending/Servicing." **Ex. A**. As such, it is expressly exempted from the TSSA, just as it is from the CSPA. *See* R.C. 4719.01(B)(9).

Similarly, Plaintiff's allegation of a CSPA violation predicated on the TCPA fails to state a claim because Plaintiff fails to allege facts sufficient to establish any alleged unsolicited communication from CCM was unfair, deceptive, or unconscionable. In *Culbreath v. Golding Enterprises, L.L.C.*, 114 Ohio St. 3d 357, 2007 Ohio 4278, 872 N.E.2d 284 (Ohio 2007), the Supreme Court of Ohio held that even if a defendant's act violated the provisions of the TCPA, "absent some showing that it was unfair or deceptive, it could not be in violation of the OSCPA." See *Id*. at 291 ("in order to prevail on those claims, however, plaintiffs do have to make a showing that the unsolicited fax is part of a consumer transaction that is a deceptive, unfair, or unconscionable practice."); *See also Charvat v. DFS Servs. LLC,* 781 F.Supp.2d 588, 594 (S.D.Ohio 2011) (granting a motion to dismiss where the plaintiff's complaint failed to allege any of the calls at issue were unfair or deceptive).

Here, Plaintiff fails to assert any factual allegations to substantiate a finding that CCM's alleged communications with Plaintiff were unfair, deceptive, or unconscionable. *See generally*

*Pl's Amend. Compl.* Accordingly, for the same reasons articulated by the Supreme Court in *Culbreath* and the United States District Court for the Southern District of Ohio in *Charvat*, Plaintiff's Amended Complaint fails to state a claim that CCM's alleged TCPA violation substantiates a CSPA claim. Accordingly, Count IV of Plaintiff's Amended Complaint must be dismissed.

## IV. <u>CONCLUSION</u>

Since Plaintiff's Amended Complaint contain no viable claims, CCM's motion to dismiss should be granted and the Court should dismiss Plaintiff's claims against CCM with prejudice.

Respectfully submitted,


/s/Kevin W. Kita
KEVIN W. KITA (0088029)
Sutter O'Connell Co.
1301 East 9th Street
3600 Erieview Tower
Cleveland, Ohio 44114
Phone: (216) 928-2200
Fax: (216) 928-4400
Email: kkita@sutter-law.com

*Attorney for Defendant*
*CrossCountry Mortgage, LLC*

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion to Dismiss has been forwarded this the 12th day of September 2022 to:

Bryan Anthony Reo
Reo Law, LLC
P.O. Box 5100
Mentor, Ohio 44061
reo@reolaw.org

Attorney for Plaintiffs

                                              /s/Kevin W. Kita
                                              KEVIN W. KITA (0088029)