# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **SAM KATZ** | Case No. 1:22-cv-00925-PAB |
| Plaintiff, | Hon. Pamela A. Barker |
| v. | Magistrate. Thomas M. Parker |
| **CrossCountry Mortgage, LLC**. | |
| Defendant. | |

**REO LAW, LLC**
Bryan Anthony Reo (#0097470)
P.O. Box 5100
Mentor, OH 44061
(T):  (440) 313-5893
(E):  reo@reolaw.org
*Attorney for Plaintiff Samuel Katz*

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

NOW COMES Samuel Katz (Plaintiff), by and through the undersigned counsel and hereby propounds upon CrossCountry Mortgage, LLC, Inc. [also known as CrossCountry Mortgage] ("Defendant") and this Honorable Court, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss.


Defendant has moved to dismiss Plaintiff's claim under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Defendant's motion should be denied in toto. In the alternative, leave to amend should be granted, because Defendant has failed to articulate a basis by which amendment would be futile or by which Plaintiff's claims would necessarily fail as a matter of law, and the interests

of justice would favor and indeed require leave to amend being granted. Defendant essentially alleges pleading deficiencies, not that Plaintiff's claims necessarily fail as a matter of law, and believe this entitles them to a dismissal with prejudice, it does not; at most Defendant would be entitled to dismissal without prejudice with Plaintiff being given leave to amend. However, for the reasons that Plaintiff will demonstrate below, Plaintiff has stated sufficient facts to demonstrate a plausible entitle to relief, or could do so via amendment if the First Amended Complaint has not done so.

**DEFENDANT'S REQUESTED RELIEF OF DISMISSAL WITH PREJUDICE IS INAPPROPRIATE WHEN BASED UPON AN ALLEGED PLEADING DEFICIENCY.**

Defendant relies heavily on *Reo v. Caribbean Cruise Line*[1] to raise issues in regards to pleading standards, but Defendant fails to take heed of the fact that alleged pleading deficiencies do not generally entitle a defendant to a dismissal with prejudice and an adjudication on the merits. Indeed Plaintiffs in *Reo v. Caribbean Cruise Line* were given leave to file a First Amended Complaint, Second Amended Complaint, and a Third Amended Complaint, demonstrating that dismissals with prejudice, adjudications on the merits, for alleged pleading deficiencies, are generally not favored as ways to resolve cases where the defendant takes issue with alleged pleading deficiencies, especially if amendment can cure the deficiency, amendment would not be futile, or justice otherwise requires amendment being granted. Defendant has provided no basis to believe that any deficiency, if found to exist, would be unable to be cured by amendment, that

---

[1] A case which despite the name of Plaintiff's Counsel being the name of the Plaintiff as Plaintiff's Counsel was the lead Plaintiff in that case, Plaintiff's Counsel is not particularly familiar with as Plaintiff's Counsel was represented by a TCPA firm from California in that case and they handled the litigation including the pleadings.

Defendant would be prejudiced at this early stage in the proceedings by such an amendment occurring, or that amendment would be futile. Defendant's own motion makes it clear that they recognize Plaintiff is pleading, among other, TCPA, CSPA, and TSSA claims, predicated on the Defendant's use of ATDS as well as delivery of recorded or artificial voice messages (however the dialing occurred), with Defendant merely taking issue with the strength of the pleadings, not the legal sufficiency of the claims themselves.

## PLAINTIFF HAS SUFFICIENTLY PLED FACTS CONSISTENT WITH ATDS AND RECORDED MESSAGES.

Plaintiff provided that on some calls there was a perceptible delay from his answering the call and saying "hello" and the call engaging or the Defendant (or its agents) otherwise coming on the call. This is the pleading stage, not the proof stage. Plaintiff is not, at this time, required to definitively and conclusively prove the Defendant or its agents used an ATDS device.

Defendant's assertion that Plaintiff provides insufficient details to support that some of the calls consisted of recorded messages is a red herring and misleading. Plaintiff is not required to describe each syllable or utterance that occurred on the call, whether recorded message or otherwise. A layman is allowed to testify as to a call consisting of a pre-recorded or artificial voice. Plaintiff has sufficiently alleged that the calls consisted of a recorded message, he need not provide an explanation detailing his attempts to verbally engage with the message, only to be unable to do so. Plaintiff is an average reasonable person and as such he can affirmatively state that some calls were recorded messages, based on common knowledge and an ability to differentiate between an actual human voice from a live person on a call and a recording.

Whether or not some of the alleged calls consisted of artificial or pre-recorded voice is a matter to be resolved on a motion per Fed. R. Civ. P. 56 after discovery, not at the initial onset via a Fed. R. Civ. P. 12(b)(6) stage. Plaintiff is not required at this time to establish, by a preponderance of the evidence, or by any standard, that the calls were indeed artificial or pre-recorded voice. He is not required to give an account of each syllable, supported with an attached expert report attesting to the artificial nature and quality of the voice. If Plaintiff asserts that at least some calls consisted of artificial pre-recorded voices, that should be a sufficient for pleading purposes at this stage.

Defendant seems to want to obtain Fed. R. Civ. P. 56 relief on a much lower standard, by shifting the burden to Plaintiff and making Plaintiff *prove* his case at this stage, while hiding behind the facade of insisting that Plaintiff has improperly pled his claims. Defendant's caption their motion Fed. R. Civ. P. 12(b)(6) but in essence it is really a gussied up disguised back-door Fed. R. Civ. P. 56 motion for summary judgment[2] that seeks to resolve factual disputes and adjudicate claims, indeed the entire case, on the merits. Plaintiff's claims are properly pled, whether they will ultimately be proven by Plaintiff sufficiently carrying and meeting his evidentiary burden of production and persuasion remains to be seen, but the Court should permit Plaintiff to move forward and prepare to try to so prove his case.

---

[2] The Court could, in a procedurally proper manner, convert Defendant's motion to a Fed. R. Civ. P. 56 motion, hold in abeyance any ruling, permit discovery, and then permit all relevant briefing and inclusion/consideration of all relevant materials/exhibits.

## PLAINTIFF'S TCPA CLAIMS ARE PLAUSIBLE AND HAVE BEEN SUFFICIENTLY PLED AND PLAUSIBLY STATED.

Defendant maintains that Plaintiff's claims are threadbare recitals of the relevant statutes. Plaintiff provides that his number is a telephone number for which he is charged when he receives a call, per 47 U.S.C. § 227(b)(1)(a)(iii), that the number was registered on the National Do Not Call Registry as of November 2020, that the Defendant called throughout 2019 and into 2022, that the calls delivered an artificial pre-recorded voice message or involved a human operator to whom Plaintiff was transferred after a perceptible delay, that the calls were intrusive, harassing, obnoxious, annoying, and unwanted, and that none of the calls were consensual, Plaintiff had no prior established business relationship with Defendant and did not request the calls, and that Plaintiff actually made a specific "do not call" request to Defendant on a specified date and wanted to be included on Defendant's internal do not call list, and that calls often involved "live transfers" to Defendant or left call back numbers that resulted in Plaintiff directly reaching Defendant if he called the number. None of these pleaded facts would be consistent with a mere "threadbare recital" of the TCPA.

Plaintiff's assertion that his number is on the National Do Not Call Registry of November 2020 is not a "threadbare recital" of an element of the statute.

Plaintiff's assertion he made a specific request on 7/24/2019 to be placed on Defendant's Internal Do Not Call List is not a "threadbare recital" of an element of the statute.

Plaintiff's assertion that the calls involved artificial pre-recorded voice is not a "threadbare recital" of an element of the statute.

Plaintiff's assertion that some calls had perceptible delays before being routed to possibly real human operators is not a "threadbare recital" of an element of the statute.

Plaintiff's assertion that he is charged for the phone calls, is not a "threadbare recital" of an element of the statute. Plaintiff is not required to provide and attach phone bills, billing statements, or financial records at this stage of this case.

Defendant's own citation cuts against them-

To state a claim under 47 U.S.C. 227(b), a complaint must allege facts demonstrating that the plaintiff: (1) received a call; (2) on a cellular line for which the called party is charged for the call or on a residential telephone line; (3) using ATDS equipment or an artificial or prerecorded voice; and (4) made without prior consent and not for emergency purposes. *Reo v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 35596, *9

Plaintiff has alleged that he received calls, that he was charged for the call(s), and that some of the calls consisted of artificial pre-recorded voice while others involved perceptible delay prior to routing to a human operator (consistent with ATDS), and that the calls were made without prior consent and in fact were made after a specific "do not call" request/demand was made on Defendant by Plaintiff.

6

Defendant has made an erroneous misstatement of law on (2) in their 4 part list of *Reo v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 35596, in regards to "a cellular line for which the called party is charged for the call or on a residential telephone line." The TCPA does not require that the call be placed "on a cellular line for which the called party is charged for the call." Rather, either one or the other (cellular line or a service for which the party is charged) would suffice-

47 USC § 227(b)(1)(A)

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial *or* prerecorded voice—

(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

(ii)  to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii)  to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, *__or__* any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States; (emphasis added- note the word "or" in the list)

The word "Or" operates as a grammatical disjunctive, "A, B, or C" would mean that any one of the three will suffice, it does not mean that two are required or all three are required. Defendant appears to have hit a snag in regards to "or vs and" and whether a disjunctive list that is clearly exhaustive in providing numerous and varied ways by which any one option may satisfy the element of the statute, requires the presence of all options.

Thus a violation of 227(b) could occur by calling a cellular phone to deliver an artificial or pre-recorded message by any means (ATDS or otherwise), or calling a cellular phone with an ATDS even if no artificial or pre-recorded message is delivered, or calling any service for which the called party is charged for the call. Defendant has misstated or misinterpreted law in an incorrect analysis and conflated and combined an "or" into an "and" because a call does not have to be placed to a cellular phone for which the called party is charged for the call, rather it is sufficient that a call is placed to a cellular phone, or to any phone or service for which the called party is charged for the call. It is possible that Defendant has simply made an honest grammatical mistake. In any event Plaintiff is not required to plead, let alone prove, that the calls were made to a cellular phone *and* to a service that he was charged for the calls, only that the calls were placed to a cellular phone *or* to a service for which he was charged for the call.

**DEFENDANT IS NOT EXEMPT FROM THE CSPA BECAUSE PLAINTIFF WAS NEVER A CUSTOMER OF DEFENDANT.**

Cross-Country Mortgage's reliance on *Ferron v. Fifth Third Bank* is tremendously misplaced. Ferron involved the placement by a financial institution of an advertisement in a publication of general circulation, that is a newspaper, which could be seen by anybody, and indeed would only be seen by subscribers or purchasers who wanted to read a copy of the circulation, and

the advertisement was not directed to any one specific individual. This action is distinguishable because not only did Defendant direct their advertisement specifically to Plaintiff Katz, but Defendant intruded into his life by calling him and by continuing to call him after they were specifically told to place him on their internal do not call list. Calling a private party on the phone to solicit directly to the recipient of the call is absolutely distinguishable from merely placing an advertisement in a newspaper of general circulation. The facts and legal reasoning from *Ferron v. Fifth Third Bank* are thus distinguishable and the legal conclusions reached are not controlling as to the present set of operative facts that exist in this case. Ferron saw something in a newspaper of general circulation not aimed at anybody in particular and not circulated in violation of an insistence of "no contact" but rather just put into general circulation. Katz got repeatedly called despite his number being listed on the National Do Not Call Registry and despite his specific "do not call" requests to the Defendant and its agents. The differences that distinguish Katz and Ferron could not be any stark.

Defendant believes its status as a mortgage broker is dispositive of the matter and that the CSPA does not apply to them. The statute is unambiguous that the exemption for transactions involves mortgage brokers and *their customers* of which Plaintiff is not one, was never one, and did not seek to become one. The statute does not state that cold call telemarketers or their agents, making calls to try to harass random people into becoming customers serves as the basis to avail oneself of the exemption or that randomly cold calling people somehow transforms them from "random people targeted for telecommunications harassment" into "customers for purposes of exempting the conduct from the CSPA." There is absolutely no record evidence that Plaintiff is or

9

was a customer of the Defendant CCM. The statute telling states, "and their customers" as opposed to "potential customers" or "those solicited to become customers."

Non-consensual advertising via cold call telemarketing cannot serve as a basis to support a finding that a called party is legally a consumer or customer of the entity that has harassed him by the phone. If all it takes to establish a business-customer relationship is to non-consensually cold-call somebody who has already demanded to be on an internal do not call list, may a man establish an engagement to marry with a woman who has asked him to leave her alone by grabbing her and kissing her? Then imagine when she demands to be released and that he stop kissing her, he proclaims that because he has kissed her, they are engaged or even now married, and she has no right to refuse further attention, regardless of how unwanted it is. By applying Defendant's logic the instant a man grabs a random woman and kisses her, they are an in a relationship and she cannot rightly claim assault or any sort of gross imposition, because he determined they were in a relationship when he chose to non-consensually kiss her and contact her.

Defendant CCM is essentially proclaiming, "we get to decide who is a customer and a consumer. If we call you, you're a consumer, you're a customer." If the called party says, "leave me alone, no more calls, I don't want to be called, I don't want to be your customer" CCM's response is essentially, "no, we decided you are a customer, we can call you whenever we want, because once we call you, you count as a customer." That would be an absolutely absurd situation, where a business can decide, "we're establishing a relationship predicated on the fact we are willing to call you despite your number's placement on the national do not call registry and despite

10

your specific demand to us that we don't call you again, and because we are willing to call you again, we use this as the basis to claim you are a customer."

Apparently Defendant believes that it has the ability and power to unilaterally establish business relationships through non-consensual and explicitly unwanted cold-call telemarketing. What sort of logic is that? The TCPA would be completely and utterly useless if all that was required to establish that somebody being called as a consumer/customer with an established relationship was to begin soliciting them to purchase something. Defendant's proposition that once an entity solicits somebody, they count as a customer for purposes of an established business relationship would necessarily result in the effective judicial scrapping of every telemarketing statute in the country, state and federal, on the basis that the instant a cold-call telemarketer calls a number, that is to say engages in an activity designed to solicit a potential client or customer, the called person is immediately a customer or consumer for statutory purposes of Defendant's purported exemption procured via cold-call marketing activity. This is logical nonsense.

Again, the reliance on *Ferron v. Fifth Third Bank* is misplaced and defective because Ferron involved a newspaper of general circulation that was not specifically directed to Ferron and did not violate any relevant statutes. Defendant violated the TCPA, 227(b) and 227(c) to call Plaintiff because his number was on the national do not call registry and he made specific do not call requests.

Essentially, *Ferron v. Fifth Third Bank* was Ferron complaining that Fifth Third Bank threw a baseball, in the air and caught it, while standing in a public spot, and because Ferron saw

11

it and didn't like it, he considered it actionable. Katz is complaining that CCM threw a baseball through the front window of his house, and after being told not to do so, CCM proceeded to throw another baseball through another window while claiming that the first window they broke established that they have rights to Katz's property and are in a business relationship with Katz and he is legally defined as a customer whether he wants to be or not.

**Defendant Enjoys No Exemption Because Plaintiff Was Not An Actual Customer.**

Plaintiff will readily agree that *if* Plaintiff had been a customer of the Defendant, and had a dispute arising from some actual consumer transaction with Defendant, Defendant would, as a mortgage broker, generally be exempt from claims arising under the CSPA. However, and most importantly, Plaintiff was never a customer of Defendant, Plaintiff was the recipient of unwanted telecommunications solicitations[3] that invited him to incur a financial or legal obligation with Defendant. Defendant completely glosses over this fact because it is determinative of Defendant not being able to avail itself of the exemption that mortgage brokers enjoy under the CSPA for consumer transactions with "their customers" and Defendant has no way to address that glaring issue other than to lean entirely on easily distinguishable cases that are not relevant to the facts at hand.

Defendant's reliance on *Anderson v Barclay's Capital Real Estate, Inc.*, is the equivalent of building a house on quick sand, because it involved a consumer who was suing his mortgage lender for the improper servicing of his residential mortgage loan, a transaction that Plaintiff and

---

[3] If Defendants prefers Plaintiff will be happy to plead a cause of action for R.C. 2307.60 and allege the underlying crime as telecommunications harassment. Will Defendant contend an exemption from Ohio's criminal statutes and civil causes of action for criminal damaging?

his Counsel agree would fall squarely within the exemption from the CSPA as Anderson was a customer of the mortgage lender/broker. Anderson is a red herring because it does not support the proposition that a mortgage lender/broker is categorically exempt from any and all CSPA claims merely by virtue of the status of being a mortgage lender/broker, rather the situation must be examined through the lens of whether the plaintiff is an actual customer of the mortgage lender/broker. The exemption that applies as to a mortgage broker or lender dealing with "their customers" does not extend to allow a mortgage broker to engage in cold-call telemarketing as to members of the general public, with impunity. Defendant tellingly cites no legal authority in support of that proposition and has to resort to grasping at straws with Anderson which is completely inapplicable to the present situation and is easily distinguishable. The plaintiff in Anderson was an actual customer of the defendant he was suing for CSPA violations. Plaintiff in this case is not and was never a customer of the Defendant mortgage broker he is suing for CSPA violations.

Defendant's reliance on *Zanni v. Stelzer* is also misplaced because yet again that case was between a customer/borrower who alleged that the mortgage lender of whom he was a customer/borrower, had mismanaged the mortgage note and he pursued a CSPA claim. Defendant cites case after case for a proposition that Plaintiff is inclined to agree with, mortgage lenders/brokers are generally exempt from CSPA claims brought by their own customers in regards dispute arising as to allegedly mishandling the mortgage or the loan, that issue is not in dispute and it is also completely irrelevant to the instant action. Plaintiff will generally agree with that proposition regarding CSPA exemptions for mortgage brokers interacting with their own actual customers. Plaintiff will also once again point out, Plaintiff is not and was never a customer of

Defendant and did not seek to become a customer of Defendant. Plaintiff's dispute with Defendant does not arise out of a customer-lender relationship whereby Plaintiff alleges a loan was mishandled. Plaintiff's dispute with Defendant arises out of unwanted telemarketing conducted by Defendant in violation of relevant Ohio and Federal law. Defendant has yet to cite one piece of controlling law that provides a categoric CSPA/TSSA exemption to a mortgage broker to cold call non-customers and solicit them by phone. Defendant doesn't cite any such cases because Defendant doesn't have any to cite, there are no cases to support that position, they don't exist. If such cases existed then Defendant wouldn't be reduced to grasping at straws and reaching for cases that clearly are distinguishable.

Plaintiff is not alleging that Defendant did something as a business with whom he had a customer-business relationship, such as improperly servicing a loan, by which conduct he means to avail himself of the remedies of the CSPA. Plaintiff has no relationship with Defendant, Plaintiff wants no relationship with Defendant. Plaintiff is on the National Do Not Call Registry. Plaintiff has insisted, directly to Defendant, "do not call me again, stop calling, put me on your internal do not call list." This is not the basis by which a relationship forms or should be found to form. Telling a telemarketing harasser, "stop calling me" does not create a business relationship, the very notion that it could result in your being considered a customer, because they tried to solicit you to become a customer, is absurd on its face to the point of being farcical. Attempting to argue that Katz is ac customer shows simply because he was solicited is essentially Defendant revealing how truly desperate they are, because they don't have solid ground on which to stand.

**Plaintiff has Sufficiently Pled a Plausible CSPA Claim.**

14

In regards to Plaintiff allegedly failing to properly plead a CSPA claim, Ohio courts have held that "a complaint alleging that a party 'violated the CSPA by committing an act or practice declared to be deceptive by rules promulgated by the attorney general' suffices to state a claim for relief under the CSPA." *Ferron v. Dish Network, L.L.C.*, 195 Ohio App.3d 686, 2011-Ohio-5235 (10th Dist.). See also *Reo[4] v. Starkist Co*. 15CV002197, (Lake County Court of Common Pleas 2015) (order denying defendant's motion to dismiss) "this complaint states much more than in Ferron and makes abundantly clear what Reo claims is unfair or deceptive with respect to consumer transactions between himself and Starkist. It need not state more."

In the instant action, Plaintiff has stated a plausible CSPA claim, Defendant is on notice of Plaintiff's claim, the grounds upon which it rests, and the claim demonstrates a plausible entitlement to relief in so much that if Defendant is found liable for TCPA violations, there are concurrent CSPA violations based on Ohio law. Plaintiff has plausibly stated a CSPA claim predicated on the TCPA as well as by other statutes. Ohio law is controlling on this matter because if the Defendant violated the TCPA they have *per se* violated the CSPA.

If Plaintiff's TCPA claims are viable then his CSPA claims predicated on the violations of the TCPA claims are also viable as well as properly and sufficiently pled. If Plaintiff prevails on

---

[4] This case was litigated by Plaintiff's Counsel, who proceeded Pro Se in the Court of Common Pleas and the case was about cans of tuna fish allegedly containing less weight of tuna per can than the amount advertised on the label of the can. Defendant Starkist moved to dismiss and argued they were not sufficiently on notice as to what Plaintiff Reo insisted was unfair and deceptive in connection with the consumer transaction. The Court of Common Pleas rejected Starkist's arguments, as this Court should reject CCM's arguments in this instant action.

one TCPA claim he will necessarily prevail on at least one CSPA claim predicated on the prevailing of said TCPA claim.

**Ohio Law Provides That Plaintiff's CSPA Violations Predicated on TCPA Violations Are Viable and Actionable Claims.**

The Ohio Office of Attorney General Public Inspection File has accepted and held that the following are unfair and deceptive acts for the purposes of finding violations of the Consumer Sales Practices Act. The Public Inspection File is binding as to the matters it speaks to.

> The legal obligations imposed by the FCC's TCPA rules are obligations owed to consumers. The court declared that it is an unfair, deceptive and/or unconscionable act or practice, in violation of R.C. § 1345.02(A) and/or § 1345.03(A), for a supplier to engage a consumer in a telephone solicitation transaction and violate any of the FCC's TCPA regulations. Each of the following specific telephone solicitation practices are separate and distinct unfair and deceptive practices pursuant to the CSPA: For a supplier to initiate a telephone call to a consumer and fail to: **1. volunteer the full name of the telephone agent, not just the first name, without being asked; 2. volunteer the phone number or address of the business without being asked; 3. honor a consumer's prior Do Not Call demand by re-calling that consumer's residence; 4. promptly mail the supplier's Do Not Call policy upon the consumer's demand; 5. immediately record a consumer's Do Not call request on a supplier's Do Not Call list.** (emphasis added)
>
> *Charvat v. Continental Mortgage*, (99CVH12 10225, Franklin Municipal Court, 1999) PIF # 100018821

It was further held, in the PIF, from Charvat v. Continental Mortgage-

> The courts of Ohio were authorized to declare additional practices unfair or deceptive. The illegal practice becomes actionable by the public at large, without the need to seek the declaration, upon the filing of the court's final order and declaration in the Attorney General's Public Inspection File.
>
> Id.

Violations of the obligations imposed by the FCC's rules and regulations implementing the TCPA are clearly per se violations of the CSPA.

**DEFENDANT'S AGENTS ARE NOT EXEMPT FROM THE TSSA BECAUSE THEY ARE NOT SUPERVISED FINANCIAL INSTITUTIONS**

To the extent that some of the calls apparently came directly from Defendant, Plaintiff would agree that those calls, and only those calls, might possibly be exempt from the registration requirements of the TSSA due to the language of R.C. 4719(B)(9), however, to the extent that a significant portion of the calls came from a third party call center and were then routed to Defendant, Plaintiff would maintain Defendant is liable for those calls because Defendant's third party call center or outside call center is not a supervised financial institution engaged in the business of mortgage brokering, lending or servicing. Would an ice cream truck hired by a mortgage broker to dispense ice cream to the public while engaging in a telemarketing campaign be exempt from the TSSA because for that time they were operating on behalf of a mortgage broker?

There is also the issue that there is a difference and distinction between making calls to engage in the servicing of a loan, and making calls to attempt to solicit, in a cold call manner, business from people you seek to cause to incur a financial obligation as a result of the call. A categoric exemption for a cold call telemarketer who happens to be mortgage lender is not as clear cut as the Defendant would want this Court to believe. Defendant cites no controlling legal authority or any principle or doctrine of law to support the proposition that an exemption for a mortgage lender to make a phone call to service a loan with an actual current customer, somehow extends to a blanket, categoric, and total exemption to call any and all persons, carte blanche, for purposes of soliciting business from non-customers. This Court may once again note, Plaintiff is

17

not, was not, and has never been a customer of Defendant, nor has Plaintiff ever requested contact by Defendant, rather to the contrary Plaintiff has registered his number on the National Do Not Call Registry and Plaintiff made specific "Do Not Call" requests to Defendant.

Defendant has not provided a legal basis by which they would be exempt from the registration requirements if they are going to engage in cold-call telemarketing, or how their authorized agents, not even being licensed as mortgage brokers, but rather outright call centers, would benefit from any such exemption assuming arguendo that Defendant itself directly enjoyed such an exemption. An exemption would not generally transfer to an agent. Plaintiff's Counsel is licensed to practice law in the state of Ohio, therefore Plaintiff's Counsel may so practice, but Plaintiff's Counsel may not engage a non-licensed individual to engage in law practice at the direction of Plaintiff's Counsel while stating, "my agent enjoys the legal privileges I myself would enjoy."

Defendant, in their arguments against the CSPA and their invocation of their idea of what constitutes a customer/consumer, admitted that Plaintiff was solicited to become financially obligated, they maintain they were advertising to a potential or prospective customer and they believe this activity falls within what they consider their exemption for CSPA purposes. It is not questioned that Katz was solicited by Defendant and Defendant's agents to become financially obligated via buying Defendant's goods and services.

**JUSTICE AND EQUITY WOULD STRONGLY FAVOR PERMITTING PLAINTIFF LEAVE TO AMEND TO CURE ANY ALLEGED PLEADING DEFICIENCIES**

Assuming, arguendo, that Defendant was correct in its assertion that there are pleading deficiencies within Plaintiff's Complaint, none of those deficiencies would entitle Defendant to what they seek, that being a dismissal with prejudice and an adjudication on the merits. Rather Fed. R. Civ. P. 15 and the relevant body of case law on the matter of amendment, would strongly favor leave to amend being granted to Plaintiff, particularly in light of the fact that amendment would not be futile. Defendant tellingly does not allege that Plaintiff cannot state plausible claims, but rather that Plaintiff has failed to provide sufficient facts to properly allege ATDS, recorded messages, solicitations, etc. These are not arguments that Defendant is entitled to judgment as a matter of law and that Plaintiff's claims must necessarily fail as a matter of law, but rather are arguments that strike at the strength of the pleadings, not the legal sufficiency of the underlying claims themselves.

There is no reason to believe, and Defendant does not even truly attempt to argue, that the alleged deficiencies could not be cured by amendment. Further, while Defendant has taken issue with pleading deficiencies of the TCPA claims while maintaining an exemption from the CSPA and TSSA. In short, Defendant is not entitled to the "dismissal with prejudice" that they seek, because they have not even bothered to allege they are exempt, as a matter of law, from the TCPA, while their reliance on irrelevant case precedent to claim CSPA and TSSA exemptions is simply misplaced.

Defendant's motion should be denied in its entirety. In the alternative Plaintiff would respectfully request leave to file an amended complaint to resolve any alleged pleading deficiencies.

RESPECTFULLY SUBMITTED,


/S/ BRYAN ANTHONY REO
Bryan Anthony Reo (#0097470)
Reo Law LLC
P.O. Box 5100
Mentor, OH 44061
(Business):  (216) 505-0811
(Mobile):  (440) 313-5893
(E):  Reo@ReoLaw.org
  *Attorney for Plaintiff Sam Katz*

## <u>CERTIFICATE OF SERVICE</u>

I, Bryan Anthony Reo, affirm that I am a Counsel to a Party to the above-captioned civil action, and on October 11, 2022, a true and accurate copy of Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss has been electronically filed and thus served electronically upon all parties who have appeared through counsel.


<u>/S/ BRYAN ANTHONY REO</u>
Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(P):  (440) 313-5893
(E):  Reo@ReoLaw.org
*Attorney for Plaintiff Sam Katz*

Dated:  October 11, 2022