IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| SAM KATZ, | Case No. 1:22-CV-00925 |
|     Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| CROSSCOUNTRY MORTGAGE, LLC, | MEMORANDUM OPINION AND ORDER |
|     Defendant. | |

This matter comes before the Court upon the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) of Defendant CrossCountry Mortgage, LLC ("Defendant" or "CrossCountry") filed on September 12, 2022 ("Defendant's Motion"). (Doc. No. 33.) Plaintiff Samuel Katz ("Plaintiff") filed a Brief in Opposition on October 11, 2022 ("Plaintiff's Opposition") (Doc. No. 35) to which Defendant replied on October 25, 2022 ("Defendant's Reply") (Doc. No. 36).

For the following reasons, Defendant's Motion is GRANTED.

I.    Background

    A.    Factual Allegations

Plaintiff's First Amended Complaint ("FAC") sets forth the following allegations. Plaintiff is a natural person domiciled in Arkansas. (Doc. No. 32, ¶ 2.) Defendant is a business headquartered in Ohio. (*Id.* at ¶ 3.) At all times relevant to the FAC, Plaintiff maintained a telephone within the meaning of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and Plaintiff is charged when he receives a call to that telephone. (*Id.* at ¶ 7.) Plaintiff listed his telephone number on the National Do Not Call Registry in November 2020. (*Id.* at ¶ 8.)

Using an Automated Telephone Dialing System ("ATDS"), "Defendant collectively made multiple calls per week, beginning in 2019 and continuing into 2022, to Plaintiff's telephone." (*Id.* at ¶ 9.) Some of the calls involved "artificial pre-recorded voices while other calls routed to possible human operators after a perceptible delay." (*Id.* at ¶¶ 10, 11; *see also id.* at ¶ 20.) "Many calls were directly made by Defendant and Defendant identified itself or the call resulted in a direct routing to Defendant," while "[o]ther calls made by Defendant's agents resulted in 'live transfers' to Defendant." (*Id.* at ¶¶ 18, 19.) "Plaintiff received some calls that resulted in the receipt of voicemails left by Defendant. When Plaintiff returned the call and called the number(s) in question, he directly reached Defendant[.]" (*Id.* at ¶ 21.) On July 24, 2019, "Plaintiff told Defendant, 'place me on your do not call list.'" (*Id.* at ¶ 16.)

These calls were "intrusive, harassing, obnoxious, annoying, and unwanted." (*Id.* at ¶ 13.) Plaintiff did not have a relationship with Defendant and never provided Defendant with express or implied consent for Defendant to call Plaintiff's telephone, nor did Plaintiff ever provide Defendant or Defendant's affiliates with his telephone number. (*Id.* at ¶¶ 14, 22.) According to Plaintiff, as of February 25, 2022, "there is no record with the State of Ohio Office of the Attorney General that the Defendant is licensed and registered to engage in telephone solicitation within the state of Ohio." (*Id.* at ¶ 23.)

### B. Procedural History

On June 2, 2022, Plaintiff filed a complaint in this Court against CrossCountry, as well as against Defendants Federal Savings Bank, Caliber Home Loans, Inc., LoanDepot.com, LLC, Allied First Bank, and Perry Johnson Mortgage Company. (Doc. No. 1.) On June 27, 2022, CrossCountry filed a motion to dismiss, or in the alternative, motion to sever Plaintiff's claims, and on June 27,

2022 and July 15, 2022, respectively, Defendants Perry Johnson Mortgage Company, Allied First Bank, and Federal Savings Bank filed motions to dismiss. (Doc. Nos. 3, 4, 7, 26, respectively.) On July 22, 2022, Plaintiff filed a Notice of Dismissal under Fed. R. Civ. P. 41(a)(1) as to Defendants Federal Savings Bank, Caliber Home Loans, Inc., LoanDepot.com, LLC, Allied First Bank, and Perry Johnson Mortgage Company. (Doc. No. 28.) On July 25, 2022, the Court entered a Marginal Order dismissing these Defendants from the case, leaving CrossCountry as the sole remaining Defendant. (Doc. No. 29.) On August 17, 2022, Plaintiff filed a Motion for Leave to File an Amended Complaint ("Plaintiff's Motion"). (Doc. No. 30.) In Plaintiff's Motion, he asserted that the amended complaint "would likely cure any of the alleged pleading deficiencies that served as the basis of Defendant's motion to dismiss." (*Id.* at 2.) On August 23, 2022, CrossCountry filed a Response to Plaintiff's Motion indicating that it did not oppose it. (Doc. No. 31.) On August 25, 2022, the Court granted Plaintiff's Motion. (Aug. 25, 2022 non-doc. Order.)

On August 27, 2022, Plaintiff filed his First Amended Complaint against Defendant alleging four causes of action: (1) statutory violations of the TCPA, 47 U.S.C. § 227(b)(3) (Count I); (2) statutory violations of the TCPA, 47 U.S.C. § 227(c)(5) (Count II); (3) statutory violations of the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev. C. §§ 1345.01, *et seq.* (Count III); and (4) statutory violations of the Ohio Telephone Solicitation Sales Act ("TSSA"), Ohio Rev. C. §§ 4719.01, *et seq.* (Count IV). Defendant filed the instant Motion to Dismiss on September 12, 2022 (Doc. No. 33), which Plaintiff opposed on October 11, 2022 (Doc. No. 35), and Defendant replied on October 25, 2022 (Doc. No. 36). Defendant's Motion is ripe for decision.

## II. Standard of Review

Defendant moves to dismiss Plaintiff's FAC for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), the Court accepts Plaintiff's factual allegations as true and construes the FAC in the light most favorable to Plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the FAC raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*,

551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## III. Analysis

Defendant argues that Plaintiff's FAC "employs a 'shotgun-style' pleading that merely parrots the language of the TCPA," and thus, fails to state a claim for which relief can be granted. (Doc. No. 33 at 2.) Defendant argues that "Plaintiff makes no factual allegations regarding, *inter alia*: (1) the nature of any call, i.e. the goods or services being solicited; (2) the identity of the 'lead generator' or his/her relationship to [Defendant]; [] (3) any benefits [Defendant] received from Plaintiff as a result of any alleged call"; or (4) when Defendant "supposedly called his telephone number, or even how many times they called in any given year." (*Id.* at 3.)

Plaintiff argues that he "has stated sufficient facts to demonstrate a plausible entitle[ment] to relief, or could do so via amendment if the First Amended Complaint has not done so." (Doc. No. 35 at 2.) Plaintiff argues that Defendant's Motion is, in fact, a motion for summary judgment seeking to resolve factual disputes and adjudicate claims, when, at this stage, Plaintiff's claims are properly pled to survive dismissal. (*Id.* at 4.)

### A. Count I—Statutory Violations of the TCPA, 47 U.S.C. § 227(b)(3)

As to Count I, Defendant asserts that the FAC fails to meet the pleading standard as "[t]here are no factual allegations that would support a conclusion that any call from [Defendant] employed an 'artificial or prerecorded voice'– i.e., an inability to interrupt a message or to talk with a human being," as required. (Doc. No. 33 at 5-6.) According to Defendant, Plaintiff's FAC "concedes whatever calls are alleged to be at issue were made by human beings, alleging he spoke with a 'lead

5

generator' who then transferred him and his information to a 'possible human operator.'" (*Id.* at 6 (quoting Doc. No. 32, ¶¶ 11, 19).) Finally, as to Count I, Defendant asserts that Plaintiff's only allegation supporting his conclusion that Defendant employed an automatic telephone dialing system ("ATDS") was based on Plaintiff experiencing a "perceptible delay" on the call, and Plaintiff has failed to provide an explanation as to how the alleged delay substantiated a conclusion that the call was made using an ATDS. (*Id.* at 6-7.)

Plaintiff maintains that he has sufficiently met the pleading requirements to state a claim under the TCPA. (Doc. No. 35 at 3-4.) Plaintiff asserts that he "is not required to give an account of each syllable, supported with an attached expert report attesting to the artificial nature and quality of the voice," to adequately plead that Defendant used an ATDS. (*Id.* at 4.) Rather, Plaintiff argues that his allegations "that on some calls there was a perceptible delay from his answering the call and saying 'hello' and the call engaging or the Defendant (or its agents) otherwise coming on the call," and that "at least some calls consisted of artificial pre-recorded voices," are "sufficient for pleading purposes at this stage." (*Id.* at 3-4.)

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). "The TCPA defines an ATDS as equipment that has the capacity to store telephone numbers and dial such numbers." *Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at *3 (N.D. Ohio Mar. 18, 2016) (citing 47 U.S.C. § 227(a)(1)). Thus, to state a claim under the TCPA, Plaintiff must allege that Defendant (1) made a call, (2) using an ATDS or artificial or

6

prerecorded voice, (3) to a telephone number assigned to a cellular telephone service, (4) absent the prior express consent of the Plaintiff. *See id.* at *4; *see also Seri v. CrossCountry Mortg.*, 2016 WL 5405257, at *2 (N.D. Ohio Sept. 28, 2016).

Plaintiff is also required to make "some additional factual allegations, no matter how minor, in addition to parroting the language of the statute," to sufficiently allege that Defendant utilized a prerecorded or artificial voice or used an ATDS system. *Caribbean Cruise Line*, 2016 WL 1109042, at *4; *see also Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) ("It is not unreasonable [] to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the ATDS."). As the court in *Johansen* explained:

> [A] plaintiff must supply enough additional, independent facts "to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. For example, a TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the "person" calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS.
>
> . . .
>
> This approach does not burden plaintiffs unduly by requiring pleading of technical details impossible to uncover without discovery, rather it necessitates that they plead only facts easily available to them on the basis of personal knowledge and experience. At the same time, it gives fair notice to defendants by "distinguish[ing] the particular case that is before the court from every other hypothetically possible case" under TCPA, *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir.2010), and avoids the potential abuse of the discovery process to pressure defendants into settling weak cases. *See Twombly*, 550 U.S. at 559, 127 S.Ct. at 1967; *Swanson*, 614 F.3d at 405. This approach balances the requirements of liberal pleading for plaintiffs and fair notice to defendants underpinning our legal system.

*Johansen*, 2012 WL 6590551, at *3.

In support of its argument that Plaintiff's FAC does not include sufficient allegations that Defendant used an ATDS or artificial or prerecorded voice in its alleged calls to Plaintiff, Defendant cites to *Reo*, where another court in this district granted the defendant's motion to dismiss when the complaint "contain[ed] very few factual allegations and merely parrot[ed] the statutory elements of Plaintiffs' TCPA claims, thus failing to meet the pleading standard set forth in *Twombly*." *Reo*, 2016 WL 1109042, at *3-4. In describing the complaint at issue therein, the court noted:

> There is no description of the content of the calls (or texts) and no information regarding the frequency of the calls or why they believed that an ATDS was used or why they believed that an "artificial or prerecorded voice" was used such as a period of "dead air" after answering a call or the inability to interrupt a message or to talk to a human being.

*Id.* at *4. Plaintiff does not attempt to distinguish *Reo* from this matter, and he does not cite any case law in support of his argument.

In his FAC, Plaintiff alleges that Defendant used an ATDS as evidenced by "the perceptible delay and manner in which the Plaintiff's information is transferred between the lead generator and the party the Plaintiff is transferred to," and by "some of the calls having delivered artificial pre-recorded voice messages." (Doc. No. 32, ¶ 11.) Plaintiff provides no other factual allegations to support his claim that Defendant used an ATDS or artificial or prerecorded voice.

Besides the allegation of a "perceptible delay," Plaintiff merely parrots the language of the statute. Like the complaint in *Reo*, Plaintiff's FAC does not include a description of the content of the calls or information regarding the frequency of the calls. *See Reo*, 2016 WL 1109042, at *4. As to Plaintiff's bare assertion that a "perceptible delay" occurred between a "lead generator" and "the party the Plaintiff is transferred to" (Doc. No. 32, ¶ 11), Plaintiff offers no details regarding the alleged delay Plaintiff experienced, including what occurred before or after the delay, nor does

8

Plaintiff offer any description of the "manner" by which the calls were transferred. The allegation that an ATDS was used based on "the perceptible delay and manner in which Plaintiff's information is transferred," is insufficient to state a claim.

Further, and importantly, Plaintiff does not offer any factual allegations as to the identities of the lead generator or transferee. Plaintiff does not allege that Defendant, or Defendant's agent, was the "lead generator," nor does Plaintiff identify "Defendant's agents." (*See id.* at ¶¶ 11, 19.) District courts within the Sixth Circuit have dismissed TCPA claims when the plaintiff fails to allege sufficient facts demonstrating liability for the actions of third parties. *See Reo*, 2016 WL 1109042, at *5 (dismissing plaintiffs' TCPA claims for failure to allege facts establishing vicarious liability of defendant for actions of third party); *see also Cunningham v. Kondaur Cap.*, 2014 WL 8335868, at *6-8 (M.D. Tenn. Nov. 19, 2014) (granting defendant's motion to dismiss because plaintiff failed to allege facts sufficient to hold defendant directly or vicariously liable for the alleged TCPA violations). Here, Plaintiff has failed to allege direct or vicarious liability inasmuch as he has failed to identify the source of these calls.

Without more, these allegations fail to plausibly state a claim that Defendant used an ATDS or artificial or prerecorded voice as required to state a claim under the TCPA.

### B. Count II—Statutory Violations of the TCPA, 47 U.S.C. § 227(c)(5)

As to Count II, Defendant argues that Section 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA within a 12-month period. According to Defendant, Plaintiff fails to state a claim for which relief may be granted because Plaintiff has failed to allege when Defendant called him, whether any calls were made after Defendant registered his number on the National Do-Not-Call Registry in November 2020, and any

9

facts to substantiate an allegation that Defendant made more than one call to Plaintiff within any 12-month period. (Doc. No. 33 at 8.)

In response to what he characterizes as Defendant's argument that his claims are threadbare recitals of the relevant statutes, Plaintiff asserts that his FAC includes allegations that (1) his number was put on the National Do-Not-Call Registry in November 2020; (2) Defendant called him throughout 2019 and into 2022; and (3) he made a specific request on July 24, 2019 to be placed on Defendant's internal Do-Not-Call list. (Doc. No. 35 at 5-6.) What Plaintiff fails to do is point this Court to any part of his FAC that includes an allegation that Defendant made more than one call to him within any twelve-month period of time, much less within the twelve-month period of time following his request to be put on the National Do-Not-Call Registry in November 2020.

> 47 U.S.C. § 227(c)(5) reads:
>
> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 227(c)(5).

The regulations restricting telephone solicitation are found in 47 C.F.R. § 64.1200(c)(2), which provides in relevant part:

> (c) No person or entity shall initiate any telephone solicitation to:
>
> . . .

10

>(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. . . .

47 C.F.R. § 64.1200(c)(2). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

Not only does Plaintiff's FAC fail to allege that Defendant made more than one call to him within a 12-month time frame after Plaintiff joined the National Do-No-Call Registry in November 2020, as required by 47 U.S.C. § 227(c)(5), but it also fails to allege or identify how many times he was called by Defendant in any given year. Plaintiff's sole allegation is that Defendant "*collectively* made multiple calls per week, beginning in 2019 and continuing into 2022" to Plaintiff's phone. (Doc. No. 32, ¶ 9 (emphasis added.) By using the term "collectively," Plaintiff is grouping the calls from 2019 through 2022 together, and by doing so, fails to specify the number of calls that allegedly took place each year. Because section 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA within a 12-month period, Plaintiff's FAC does not sufficiently allege a violation of the TCPA.

Further, Plaintiff fails to allege that such phone calls were, in fact, telephone solicitations. Plaintiff's FAC is devoid of any allegations that Defendant initiated these calls "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person," as required by 47 U.S.C. § 227(a)(4). As Defendant points out, Plaintiff's FAC contains no factual allegations as to the "nature of any call, i.e. the goods or services being solicited," nor any factual allegations as to "any benefits [Defendant] received from Plaintiff as a

11

result of any alleged call." (Doc. No. 33 at 3.) Without factual allegations as to the content of these calls, Plaintiff's FAC fails to properly allege that such calls were solicitations under the TCPA.

### C. Counts III and IV—State Law Claims

Counts III and IV of Plaintiff's FAC allege violations of Ohio state law—specifically statutory violations of Ohio's Consumers Sales Practices Act and statutory violations of Ohio's Telephone Solicitation Sales Act. (Doc. No. 32 at 7-10.) Defendant argues that it is exempt from liability under the CSPA and TSSA, and even if it was not, Plaintiff has failed to allege facts that support a violation of either statute. (Doc. No. 33 at 9-14.) Plaintiff argues that Defendant is not exempt from either statute, and has nevertheless adequately alleged facts to support claims of violations of both statutes. (Doc. No. 35 at 8-18.)

The Court need not address either argument. Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Having disposed of Plaintiff's federal claims and considering the relevant factors, the Court declines to exercise supplemental jurisdiction over any state law claims (Counts III and IV) and dismisses them. *See Shaver v. Brimfield Twp.*, 628 F. App'x 378, 384 (6th Cir. 2015) ("[B]ecause

the district court properly dismissed the Estate's federal claims, it did not abuse its discretion when it declined to exercise jurisdiction over the Estate's state law claims.").

### D. Leave to Amend and Dismissal with Prejudice

As a final matter, Plaintiff argues that Defendant's Motion should be denied, but "[i]n the alternative[,] Plaintiff would respectfully request leave to file an amended complaint to resolve any alleged pleading deficiencies." (Doc. No. 35 at 19.) Plaintiff further argues that "Defendant is not entitled to the 'dismissal with prejudice' that they seek, because they have not even bothered to allege they are exempt, as a matter of law, from the TCPA, while their reliance on irrelevant case precedent to claim CSPA and TSSA exemptions is simply misplaced." (*Id.*) In its Reply, Defendant argues that when "the plaintiff does not articulate how granting further leave to amend will cure the [pleading] deficienc[ies], dismissal with prejudice is the standard relief." (Doc. No. 36 at 1.)

Plaintiff's request for leave to amend is denied since Plaintiff has failed to follow the proper procedure for requesting leave to amend. "[A] bare request in an opposition to a motion to dismiss— without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)). Indeed, "[a] request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)).

Plaintiff's FAC is dismissed with prejudice. As the Sixth Circuit has explained, "a district court does not abuse its discretion by failing to grant leave to amend where the plaintiff has not sought leave and offers no basis for any proposed amendment." *United States ex rel. Harper v. Muskingum*

*Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2019) (affirming dismissal with prejudice and without leave to amend when the plaintiff provided no basis for the district court to conclude that an amendment could cure his pleading deficiencies). Relying on *Harper*, another court in this district concluded the same, explaining:

> Plaintiffs request leave to amend their complaint following dismissal for failure to state a claim without providing so much as a hint as to how a second amended complaint could potentially cure the pleading deficiencies set forth in Defendant's Rule 12(b)(6) motion and identified in the Court's dismissal order. Nor have Plaintiffs in their briefing or by affidavit identified any additional factual allegations that could meet the pleading standard. Accordingly, this Court cannot discern whether a basis to grant leave for a second amendment exists. Under these circumstances, and considering that Plaintiffs already have been granted and availed themselves of one opportunity to amend the original complaint, justice is not thwarted by the Court's dismissal with prejudice of the Amended Complaint and denial of leave to amend.

*Chambers v. Nationwide Mut. Ins. Co.*, 2021 WL 463279, at *2 (N.D. Ohio Feb. 8, 2021).

Plaintiff previously sought leave to amend his original complaint to address deficiencies raised in Defendant's initial motion to dismiss, which Defendant did not oppose, and the Court granted. (Doc. Nos. 30, 31; Aug. 25, 2022 non-doc. Order.) Nevertheless, many of the same deficiencies in Plaintiff's original complaint that Defendant raised or identified in its initial motion to dismiss (*see* Doc. No. 3 at 7-9) remain in Plaintiff's FAC. Like the plaintiff in *Chambers*, Plaintiff fails to identify any additional facts or evidence that he can now allege that would cure those deficiencies. As such, there is no indication that a second amended complaint would survive a motion to dismiss. Thus, "justice is not thwarted by the Court's dismissal with prejudice of the Amended Complaint and denial of leave to amend." *Chambers*, 2021 WL 463279, at *2.

Accordingly, Plaintiff's FAC is dismissed with prejudice without leave to amend.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 32) is GRANTED.

**IT IS SO ORDERED.**

Date: November 15, 2022

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE